# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANA LYNETTE ANDREWS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner of the Social ) <br> Security Administration,[1] ) <br> ) <br> Defendant. ) | Case No. CIV-15-438-SPS |

## OPINION AND ORDER

The claimant Shana Lynette Andrews requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 31, 1986, and was twenty-eight years old at the time of the administrative hearing (Tr. 36). She completed eighth grade, and has no past relevant work (Tr. 22, 246). The claimant alleges inability to work since April 26, 2012, due to bipolar disorder, depressive disorder, and anxiety (Tr. 245).

## Procedural History

On April 26, 2012, the claimant applied for supplemental benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application was denied. ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 25, 2014 (Tr. 12-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the nonexertional limitations of being limited to simple, routine tasks because the claimant had no past relevant work, and only occasional contact with the public (Tr. 17). The ALJ concluded that although the claimant had no

past relevant work to return to, she was nevertheless not disabled because she could perform the representative occupations of sorting jobs and hand packer (Tr. 23).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly weigh the findings of consultative examiner Dr. Kenny A. Paris, (ii) by failing to include all her limitations in the RFC assessment, and (iii) by failing to properly evaluate her subjective symptoms.  Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner must be reversed.

The ALJ determined that the claimant had the severe impairments of depression and anxiety, as well as the nonsevere impairment of inflammatory pelvic disease (Tr. 147).  The relevant medical evidence demonstrates that the claimant was largely treated on a regular basis at a clinic in Westville, Oklahoma, including treatment at various times for bipolar disorder and depression largely consisting of medication management (Tr., *e. g.*, 381, 431).

On June 20, 2012, Dr. Paris conducted a mental status/diagnostic examination of the claimant (Tr. 458).  Following the exam, she was estimated to have average intellectual functioning, and was assessed with depressive disorder NOS, anxiety disorder NOS, R/O Bipolar I disorder, and assigned a Global Assessment of Functioning Score of 55 (Tr. 461-462).  In summarizing his findings, Dr. Paris found that the claimant had average concentration, that her memory skills appeared to be somewhat limited, but that she did not have significant problems with persistence and pace (Tr. 461-462).  He estimated that her judgment was adequate, but stated that, based on her reported

symptoms, history, and performance on the exam, she had a below average ability to perform adequately in most job situations, handle the stress of a work setting, and deal with supervisors or co-workers (Tr. 462).

In October 2012, the claimant presented to Tenkiller Behavioral Services for evaluation, and was assessed with major depressive disorder, recurrent, unspecified, as well as borderline personality disorder, and a GAF of 55 (Tr. 497).

On January 3, 2013, the claimant's counselor Leighanna R. Fulton completed statements regarding her opinion as to the claimant's ability to perform basic work requirements and as to estimated absences from work. She indicated that the claimant had panic attacks due to social anxiety, as well as depression, and that the claimant would likely miss work three or more days per month (Tr. 483). She then indicated that the claimant could respond appropriately to supervision and a work situation, but could not understand, remember, and carry out simple instructions in a routine work setting, make simple work-related decisions in a routine work setting, respond appropriately to coworkers in a routine work setting, deal with changes, maintain concentration and attention for extended periods, handle normal work stress, or attend employment on a sustained bases. Additionally, she believed the claimant's impairments would cause her to take unscheduled breaks (Tr. 484).

At an initial psychiatric evaluation in June 2013, the claimant was assessed with bipolar mood disorder, mixed, recurrent and severe without psychosis and with suicidal ideation, and given a GAF of 45, with 65 being the highest in the past year (Tr. 488).

A July 2012 reviewing physician opinion reflected that the claimant had moderate limitations in the three areas of functional limitation, and noted on the worksheet portion of the RFC assessment that the claimant was moderately limited in the three typically-checked boxes of: ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 474-479). This physician reviewed Dr. Paris's assessment and summarized it, but did not mention Dr. Paris's assessment regarding the claimant's below average ability in a work setting (Tr. 476). He then stated that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 480). A second reviewing physician reviewed the record and found the claimant could perform simple and some complex types of work, interact with coworkers and supervisors on a superficial basis, and interact with the general public on a limited basis (Tr. 138).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record, except for records from an earlier application for benefits. She used the typical boilerplate language to find the claimant not credible, then cited to the claimant's inconsistent treatment, long periods of time where she went without medication, and evidence that medications have generally controlled her symptoms when she is compliant (Tr. 18). She made no analysis of Dr. Paris's opinion after reciting his findings, gave no weight to Ms. Fulton's "other source" opinion and stated it was inconsistent with unspecified treatment records, then gave great weight to the state reviewing physician opinions but stated that the claimant should only have occasional contact with the public (Tr. 19-21).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a summary of Dr. Paris's consultative examination, but failed to conduct the proper analysis and did not specify how the exam did or did not support the assigned RFC. This was important to do because Dr. Paris specifically pointed out concerns related to the claimant's ability to perform in a work setting (which tended to support at least some of Ms. Fulton's assessment). *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."). Nor did the ALJ provide any such explanation for why she

ignored this opinion. Instead, she adopted the reviewing physician's reports, which ignored the most concerning part of Dr. Paris's assessment related to her ability to perform in a work setting, without explanation.

The Court also agrees with the claimant that the ALJ erred in formulating the claimant's RFC. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7. Here, the ALJ has failed to connect the claimant's RFC to the medical evidence in the record, which she made clear when she stated that she had limited the claimant to simple work based on her lack of past work. The ALJ also failed to explain how the only other limitation of her RFC, occasional contact with the public, wholly accounted for her severe impairments.

Finally, the claimant contends that the ALJ failed to properly evaluate the claimant's subjective symptoms under the proper standard. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, that eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis may arguably have been deemed sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p and therefore the decision should also be reversed and remanded for consideration of the evidence and testimony in light of the new policy.[3]

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for

---

[3] While it is arguable that the evidence cited by the ALJ in support of his credibility determination would likewise have satisfied Soc. Sec. Rul. 16-3p, thus obviating the need for reversal and remand, *see, e. g., Wellenstein v. Colvin,* 2015 WL 5734438, at *11 (N.D. Iowa Sept. 30, 2015) (noting that the Court of Appeals for the Eighth Circuit denied remand for consideration of a new social security ruling upon finding that "although the policy changed during the pendency of the case, the policy did not affect the case."), *citing Van Vickle v. Astrue,* 539 F.3d 825, 829 n.6 (8th Cir. 2008), the undersigned Magistrate Judge finds that any re-evaluation of the evidence in light of the new standard is not for this court to make on review but rather for the ALJ to consider in the first instance.

a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**